## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-22002-CIV-KING/GARBER

FOR PLAY LIMITED, a
foreign corporation,

       Plaintiff,

v.

BOW TO STERN MAINTENANCE,
INC., a Florida corporation,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Plaintiff's Motion for Attorneys' Fees and Litigation

Expenses and Entry of Amended Final Judgment (D.E. #68), pursuant to an Order of Reference

entered by the Honorable James Lawrence King, United States District Judge.  On September 14,

2006, the Court held a hearing regarding this matter.  For the reasons set forth below, it is

recommended that the Court GRANT IN PART AND DENY IN PART Plaintiff's Motion for

Attorneys' Fees and Litigation Expenses and Entry of Amended Final Judgment, award Plaintiff

$14,280.00 in attorneys' fees, award Plaintiff $2,864.30 in costs, and amend the judgment to reflect

that Plaintiff is entitled to $27,980.38 in damages.

## BACKGROUND

In this admiralty action, Plaintiff alleged that Defendant:  (1) had completely failed to

perform some promised work and complete some promised repairs on Plaintiff's boat, and (2) had

failed to perform other promised work and make other promised repairs in a "workmanlike" manner.

*See, e.g.*, D.E. #67, at 12-13; *Little Beaver Enters. v. Humphreys Railways, Inc.*, 719 F.2d 75, 78 (4th

1

Cir. 1983) ("The warranty imposed on a contractor in admiralty is to effect ship repairs in a workmanlike manner.") (*citing, inter alia.*, *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S. Ct. 232 (1956)); *Coffman v. Hawkins & Hawkins Drilling Co., Inc.*, 594 F.2d 152, 154 (5th Cir. 1979)[1].

After a bench trial, the Court found in favor of Plaintiff.  Judge King awarded Plaintiff: $26,980.28 in compensatory damages; prejudgment interest "accruing from the date of each of the . . . expenditures" at issue, D.E. #67, at 17; and attorneys' fees.  Judge King explicitly found that Plaintiff was entitled to attorneys' fees because Defendant had "litigat[ed] in bad faith."  D.E. #67, at 18.  The Court did not specify a sum certain for prejudgment interest, but instead wrote that Plaintiff is entitled to prejudgment interest "at a rate established by Florida Statute §55.03(1) . . . ," which the Court noted in 2001 had been 6% per annum or a daily rate of .0001644.  D.E. #67 at 16.

## DISCUSSION

In Plaintiff's Motion, Plaintiff makes four requests:  (1) Plaintiff seeks $15,438.50 in attorneys' fees, which represents 88.2 hours of work at $175.00 per hour, *see* D.E. #68, at 2-3[2]; (2) Plaintiff seeks $3,881.83 in costs pursuant to 28 U.S.C. § 1920, *see* D.E. #68, at 3; (3) Plaintiff seeks amendment of an alleged typographical error in the Court's Memorandum Opinion Containing

---

[1]  Decisions rendered by the Fifth Circuit prior to October 1, 1981, are binding on federal courts within the Eleventh Circuit.  *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

[2]  In violation of Local Rule 5.1.A.4, Plaintiff failed to paginate its Motion for Attorneys' Fees and Litigation Expenses and Entry of Amended Final Judgment.  *See* D.E. #68; S.D. Fla. L.R. 5.1.A.4.  In all future filings with this Court, the parties shall strictly comply with this Court's Local Rules.  A future failure to comply with those Rules may result in a recommendation that the Court impose sanctions, possibly including but not limited to the striking of non-conforming documents.

Findings of Fact and Conclusions of Law, because in that Opinion the Court allegedly awarded Plaintiff $1,000.10 less than the amount to which Plaintiff is entitled, *see* D.E. #68, at 4 n.4 ("Instead of the sum being $26,980[.]28, the total damages should have been $27,980.38."); and (4) Plaintiff asks the Court to award a sum certain for prejudgment interest:  $5,056.73, which, according to Plaintiff, represents 6% interest calculated from the date of each relevant payment through August 2, 2006, the date the Court's Memorandum Opinion Containing Findings of Fact and Conclusions of Law was filed, *see* D.E. #68, at 3-4.

Defendant responds that:

(1) the Court should reconsider the award of attorneys' fees and expenses  in light of the Eleventh Circuit's recent opinion in *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180 (11th Cir. July 31, 2006), because in that opinion the Eleventh Circuit "redefined the standard for awarding an attorney's fee and cost[s] to the prevailing party . . . ," D.E. #72, at 1, and in light of *Amlong* the Court may not assess fees and costs absent "a finding that the Defendant's actions were tantamount to bad faith . . . ," *id.* at 2;

(2) even if the Court may award Plaintiff *any* fees, the Court may only award fees to the extent Defendant's "actions caused . . . Plaintiff to undertake additional costs and litigation expense[s] . . . ," D.E. #72, at 2, and Plaintiff has failed to "delineate any additional times imposed or caused by affirmative defenses raised by the Defendant[]" but instead is improperly "requesting *all* its time be compensated for the litigation of this matter . . . ," *id.* at 2-3 (emphasis added); *see also id.* at 5 ¶ 21;

(3) a reasonable hourly rate for Plaintiff's counsel is $150.00, not the $175.00 Plaintiff requests;

(4) a reasonable number of hours for Plaintiff's counsel to have worked on this case is 75, instead of the 88 for which Plaintiff requested reimbursement, *see* D.E. #72, at 8, because, *inter alia*: (a) Plaintiff is seeking to recover fees for 2.6 hours of non-compensable secretarial tasks, *see* D.E. #72, at 6-7; (b) Plaintiff is seeking fees for an additional 6.7 hours of work which was excessive and/or is normally done by secretaries, *see id.* at 7; and (c) Plaintiff spent excessive time on other tasks, such as a 2.0 hour entry for preparation of the Complaint, *see id.* at 6;

(5) Plaintiff's recoverable fees therefore should not exceed $13,443.30, *see* D.E. #72, at 9; and

(6) taxable costs should not exceed $2,193.30, *see* D.E. #72, at 9, because, *inter alia*:  (a) Plaintiff "has sought reimbursement for photocopies and postage, which should not be recoverable . . . ," *id.* at 8; (b) without explanation, Plaintiff has charged different costs, ranging from $27.00 to $68.00, for what is essentially the same activity - service of process on different witnesses, *see id.* at 8 - and a standard process server fee should be $30.00, *see id.* at 9; and (c) Plaintiff should not be able to recover $1,000.00 for witness fees, lodging, mileage, and travel costs for a fact witness, Mr. Byers, to appear at trial without subpoena because the witness had already been deposed and the witness was never introduced as an expert.


*Amlong & Amlong* and its relation to attorneys' fees in this action

Defendant contends that shortly before it filed its Response, the Eleventh Circuit, in *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180 (11th Cir. July 31, 2006), "redefined the standard for awarding an attorney's fee and cost[s] to the prevailing party . . . ." D.E. #72, at 1.  Defendant contends that in light of *Amlong*, this Court may not assess fees and costs absent "a finding that the

Defendant's actions were tantamount to bad faith . . . ." *Id.* at 2.  Contrary to Defendant's assertion, *Amlong* does not affect the Court's analysis of Plaintiff's Motion.

Unlike this admiralty action, *Amlong* was a Title VII sexual harassment action.  *See* 457 F.3d at 1184.  Pursuant to four separate sources of authority, the prevailing *Amlong* defendants sought sanctions against the plaintiff's lawyers (*i.e.*, as opposed to sanctions against the plaintiffs themselves).  The *Amlong* defendants sought sanctions - in the form of attorneys' fees and costs - pursuant to: 42 U.S.C. § 2000e-5(k); 28 U.S.C. § 1927; Federal Rule of Civil Procedure 26(g); and the Court's inherent authority.  *See* 457 F.3d at 1187.  Plaintiff in this action, unlike the prevailing *Amlong* defendants, does not seek fees and costs pursuant to any of those four sources of authority.

Of those four sources, the Eleventh Circuit concluded that only two - 28 U.S.C. § 1927 and the Court's inherent authority - *potentially* could support the requested sanctions because 42 U.S.C. § 2000e-5(k), "[t]he Title VII attorney's fees provision, . . . authorizes attorney's fees *only* against litigants, not against counsel . . . ," 457 F.3d at 1189, and Federal Rule of Civil Procedure 26(g) "*only* authorizes sanctions traceable to specific discovery abuses."  457 F.2d at 1189.  The Eleventh Circuit's substantive discussion therefore related only to  28 U.S.C. § 1927 and the Court's inherent authority to impose sanctions.

Because of the relation between 28 U.S.C. § 1927 and the standard for awarding sanctions pursuant to a court's inherent powers, the Eleventh Circuit determined that it did not need to substantively address the district court's sanctions award pursuant to its inherent powers.  *See* 457 F.3d at 1189-90 ("We have observed that a district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under its inherent powers. . . .  Therefore, we only examine whether the

sanctions imposed here were a proper exercise of the discretion granted to the court under § 1927. If the sanctions were permissible under § 1927, then they were proper, and there is no need to examine whether the sanctions were also permissible under the court's inherent powers.  On the other hand, if the sanctions amounted to an abuse of the district court's discretion under § 1927, they necessarily amounted to an abuse of the court's discretion under its inherent powers, because the court's inherent power to issue sanctions for vexatious conduct does not reach further than § 1927.").

With regards to 28 U.S.C. § 1927, the Eleventh Circuit wrote that a lawyer "multiplies proceedings 'unreasonably and vexatiously' within the meaning of the statute only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'"  *Amlong*, 457 F.3d at 1190 (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)).  Contrary to Defendant's argument, however, when the *Amlong* court found that such sanctions are warranted "only in situations where conduct is 'so egregious that it is tantamount to bad faith' . . . ," D.E. #72, at 1, the Eleventh Circuit did not the "redefine the standard for awarding an attorney's fee and cost[s] to the prevailing party . . . ," *id.*  Instead, as the *Amlong* court's citations and other Eleventh Circuit decisions made clear, in this Circuit "bad faith" has been the "touchstone" of § 1927 sanctions since at least 1991.  *See, e.g.*, *Amlong*, 457 F.3d at 1190; *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) ("'Bad faith' is the touchstone."); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993); *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) ("A court may assess attorney's fees against litigants, counsel, and law firms who willfully abuse judicial process by conduct tantamount to bad faith.").

In *Amlong*, the Eleventh Circuit did clarify that - consistent with its previous decision in *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220 (11th Cir. 2003) - the bad faith necessary to support §

1927 sanctions may be *objective* bad faith instead of *subjective* bad faith; in other words, objectively reckless conduct is sufficient to satisfy the § 1927 bad faith standard even if the violator "does not act knowingly and malevolently."[3]  *Amlong*, 457 F.3d at 1191; *see also id.* at 1189-93; *Schwartz*, 341 F.3d at 1225.

      *Amlong* is inapposite because this action does not involve an award of sanctions pursuant to 28 U.S.C. § 1927 or pursuant to the Court's inherent powers.  Regardless, even if Judge King had awarded sanctions pursuant to § 1927, consistent with *Amlong* he would have correctly done so because he did so only after he explicitly found that Defendant had litigated this action "in bad faith."[4]  D.E. #67, at 18; *see Amlong*, 457 F.3d at 1190-91 (discussing bad faith standard).

      The *Amlong* court did not discuss the correct standard for awarding fees and costs to a prevailing party in an admiralty action such as this case.  In fact, the *Amlong* court - which was a three-judge panel of the Eleventh Circuit, not the *en banc* Eleventh Circuit - *could not have* "redefined the standard for awarding an attorney's fee and cost[s] to the prevailing party . . . ," D.E. #72, at 1, in an admiralty case.  Prior to *Amlong*, Eleventh Circuit and pre-October 1, 1981 Fifth Circuit panels, in decisions binding on this Court, had set forth the standard for awarding fees

---

    [3]  Defendant incorrectly cited the *Amlong* court's holding when it wrote that the *Amlong* court restricted an award of fees and costs to situations in which a non-prevailing party "knowingly *and* recklessly pursue[s] a frivolous claim . . . ."  D.E. #72, at 1 (emphasis added). The *Amlong* court actually clarified that an award of fees and costs pursuant to § 1927 is appropriate if the non-prevailing party acted knowingly *or* recklessly, *i.e.*, the party does not have to act "knowingly and malevolently" in order to justify an award of fees and costs.  *See, e.g.*, *Amlong*, 457 F.3d at 1191.

    [4]  In light of Defendant's argument that the award of fees and costs was improper because there "must be a finding that Defendant's actions were tantamount to bad faith . . . ," D.E. #72, at 2 ¶ 4; *see also id.* at 1 ¶ 2, it appears that Defendant may have failed to appreciate Judge King's explicit finding that Defendant litigated "in bad faith."

and costs in admiralty actions.  *See, e.g.*, *Natco Ltd. Partnership v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001); *Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 730-31 & n.5 (5th Cir.1980); *see also, e.g.*, *Vaughan v. Atkinson*, 369 U.S. 527, 530-31, 82 S. Ct. 997, 999-1000 (1962); *Offshore Marine Towing, Inc. v. MR23*, 412 F.3d 1254, 1256-57 (11th Cir. 2005); *Southernmost Marine Servs., Inc. v. M/V Potential*, No. 03-11873, slip op. at 11 (11th Cir. Jan. 13, 2004) ("Attorney's fees in admiralty actions are available if provided for by statute, contract, or where there existed misconduct or bad faith on behalf of the non-prevailing party.") (affirming 250 F. Supp. 2d 1367 (S.D. Fla. 2003) (J. King)); *Atlantis Marine Towing, Inc. v. M/V ELIZABETH*, 346 F. Supp. 2d 1266, 1276 (S.D. Fla. 2004) (Magistrate J. Turnoff).  Only the Supreme Court or the *en banc* Eleventh Circuit, but not an Eleventh Circuit panel such as that which decided *Amlong*, may alter that standard for awarding attorneys' fees in admiralty actions.  *See, e.g.*, *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (*en banc*) ("[A] panel cannot overrule a prior one's holding even though convinced it is wrong."); *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir.1997) ("The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting *en banc* can judicially overrule a prior panel decision.") (quoting *United States v. Woodard*, 938 F.2d 1255, 1258 (11th Cir.1991)); *see also, e.g.*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000) ("Of course, pre-split or 'Old Fifth' decisions . . . are binding on us, . . . and where two prior panel decisions conflict we are bound to follow the oldest one.").

Applying the correct standard to this admiralty action (*i.e.*, not the standard that the Eleventh Circuit discussed in *Amlong*), Judge King correctly exercised his discretion to award Plaintiff attorneys' fees because he concluded that Defendant litigated in bad faith.  *See, e.g.*, *Natco Ltd. Partnership v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001); *Noritake Co. v.*

*M/V Hellenic Champion*, 627 F.2d 724, 730-31 & n.5 (5th Cir.1980); *Southernmost Marine Servs., Inc. v. M/V Potential*, No. 03-11873, slip op. at 11 (11th Cir. Jan. 13, 2004) ("Attorney's fees in admiralty actions are available if provided for by statute, contract, or where there existed misconduct or bad faith on behalf of the non-prevailing party.") (affirming 250 F. Supp. 2d 1367 (S.D. Fla. 2003) (J. King)).  *Amlong* does not affect Judge King's finding of bad faith or his conclusion that Plaintiff is entitled to recover its attorneys' fees.

Causation

Defendant's next argument essentially is one of causation:  Defendant contends that the Court may not award fees and costs because it has not made a finding that Defendant's "actions caused the Plaintiff to undertake additional costs and litigation expense[s]." D.E. #72, at 2.  Defendant contends that the Court only "awarded attorney's fees to the Plaintiff for the affirmative defenses raised on the basis that they were either without merit or abandoned . . . ," *id.* at 3, but that "at the time the Complaint was filed, the affirmative defenses were not knowingly and recklessly[5] frivolous to the point of causing excessive litigation." *Id.*  Defendant therefore argues that Plaintiff is inappropriately seeking fees related to litigation of this *entire* matter when it has failed to demonstrate that Defendant "imposed or caused" *any* additional expenditures by virtue of its affirmative defenses.

---

[5]   Once again, Defendant erroneously implies that in order to award Plaintiff fees, the Court must find that Defendant acted knowingly **and** recklessly.  However, even if the Court accepted as correct Defendant's incorrect assertion that *Amlong* controls the Court's award of fees in this action, fees would be appropriate if the Court found that Defendant acted knowingly **or** recklessly.  *See, e.g.*, *Amlong*, 457 F.3d at 1191.  Arguably, that is one of the *Amlong* court's most important holdings, if not its most important holding; and that distinction (between a *knowing* **and** *reckless* standard and a *knowing* **or** *reckless* standard) certainly would be important with respect to Plaintiff's Motion if Plaintiff had sought fees pursuant to § 1927.

*Id.* at 2-3.

The Court assumes without deciding that Defendant is correct that Plaintiff is only entitled to fees it incurred because of Defendant's bad faith litigation. Nevertheless, the undersigned disagrees with Defendant's interpretation of this action and its interpretation of the findings underlying Judge King's conclusion that Plaintiff is entitled to attorneys' fees based on Defendant's bad faith litigation. Judge King's conclusions imply that Defendant is responsible for *all* of Plaintiff's reasonable attorneys' fees by virtue of its bad faith litigation. In the section of Judge King's August 2, 2006, Order entitled "Attorneys Fees," Judge King explicitly referenced Defendant's "practice of making denials to facts which are clearly true . . ., and [of] . . . raising defenses, without any basis in fact or law, and later abandoning them at trial . . . ." D.E. #67, at 18. In other words, Plaintiff was forced to bring this action and to litigate it to trial solely because of Defendant's bad faith refusal to admit facts which were clearly true and to raise defenses without any basis in law or fact. In fact, Judge King explicitly found that Defendant's owner's testimony regarding facts crucial to Plaintiff's claims was untruthful. *See, e.g.*, D.E. #67, at 5 ("The witness' testimony is not credible and, based upon his demeanor and the Court's evaluation of the truthfulness of his testimony on this issue, in light of other competent and believable testimony in the record, it is untruthful."[6]); *id.* at 14 (Holding that Defendant's "failure to replace the aeration hoses" - precisely the conduct about which Defendant's owner had testified untruthfully - rendered Defendant's

---

[6] Judge King's explicit findings regarding Defendant's owner's untruthful testimony suggest that Judge King's finding of bad faith was not premised merely on a finding that Defendant acted recklessly, but also on a finding that Defendant acted knowingly, *i.e.* with an intent to deceive. As discussed *supra*, however, even a finding of recklessness supports Judge King's award of fees in this action, and therefore the Court did not need to explicitly determine that Defendants engaged in *knowing* misconduct in order to conclude that Plaintiff is entitled to recover its attorneys' fees from Defendant.

10

conduct "not workmanlike.").

Because Plaintiff would not have had to litigate this action at all but for Defendant's bad faith

conduct, the Court finds that Plaintiff is entitled to fees and costs for the entire action.[7]


<u>Attorneys' fees to which Plaintiff is entitled</u>

It appears that the Eleventh Circuit has not explicitly held that in admiralty cases, the starting

point for the determination of reasonable attorneys' fees is calculation of the lodestar.  However, the

Eleventh Circuit has held that calculation of the lodestar is appropriate in a number of other types

of cases, *see, e.g.*, *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994), and in an unpublished

opinion the Eleventh Circuit affirmed Judge King's use of the lodestar method to calculate attorneys'

fees in another admiralty action, *see Southernmost Marine Servs., Inc. v. M/V Potential*, No. 02-

10022-CIV-KING, slip op. at 2-3 (S.D. Fla. Aug. 6, 2003) (Magistrate J. O'Sullivan) (Report and

Recommendation), *adopted*, No.02-10022-CIV-KING, slip op. at 1-2 (S.D. Fla. Aug. 28, 2003) (J.

King), *aff'd*, No. 03-11873 (11th Cir. Jan. 13, 2004).  The Court concludes that in this action, the

starting point for the determination of reasonable attorneys' fees is calculation of the lodestar.  *See,*

*e.g.*, *Williams v. Kingston Shipping Co., Inc.*, 925 F.2d 721, 723-24 (4th Cir. 1991) (affirming district

court's use of the lodestar method in an admiralty maintenance-and-cure action).

Pursuant to the lodestar method, the Court must multiply the number of hours that Plaintiff's

counsel reasonably worked by the prevailing market rate for his work.  *See Blum v. Stenson*, 465 U.S.

---

[7]  Plaintiff is also entitled to costs as the prevailing party pursuant to Federal Rule of Civil
Procedure 54(d).  *See, e.g.*, *Chapman v. AI Transport*, 229 F.3d 1012, 1038-39 (11th Cir. 2000)
(Holding that pursuant to Rule 54(d), there exists "a presumption that costs are to be awarded to
a prevailing party . . . [and that] [t]o defeat the presumption and deny full costs, a district court
must have and state a sound basis for doing so.").

886, 888, 104 S. Ct. 1541, 1544 (1984); *Kay v. Apfel*, 176 F.3d 1322, 1324 (11th Cir. 1999); *id.* at 1328 (Fee applicants are "entitled to 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'"); *Loranger*, 10 F.3d at 781. To determine both the prevailing market rate and the hours counsel reasonably worked, the Court may rely both on testimony from other lawyers, *see Duckworth v. Whisenant*, 97 F.3d 1393, 1396-97 (11th Cir. 1996); *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988), and on its own knowledge and experience, *see Kay*, 176 F.3d at 1328; *Loranger*, 10 F.3d at 781.

After the Court has calculated the lodestar, "the [C]ourt has the opportunity to adjust the lodestar to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000); *see also, e.g.*, *Bernard v. Int'l Portfolio Mgmt., Inc.*, No. 04-60671-CIV-ZLOCH, 2005 WL 1840157, at *1 (S.D. Fla. July 25, 2005) (Chief J. Zloch).

The parties disagree as to whether the prevailing market rate for Plaintiff's counsel's, Sergio Casano's, services is $150.00 per hour or $175.00 per hour. Based on the materials Plaintiff's counsel has submitted as well as the Court's own knowledge of Mr. Casano's skills, experience, and reputation, as well as of the prevailing market rate in this community for similar services by lawyers of reasonably comparable skills, experience, and reputation, the Court concludes that Plaintiff is entitled to at least $175.00 per hour for Mr. Casano's work, and the Court therefore will recommend awarding Plaintiff the $175.00 per hour it has requested for Mr. Casano's work.

As the Court discussed *supra*, Plaintiff requests reimbursement for 88.2 hours of work, but Defendant contends that Plaintiff's counsel reasonably worked only 75 hours on this case.

12

Defendant first contends that Mr. Casano's billing of "almost 2 hours to prepare the Complaint" is excessive.  D.E. #72, at 6.  Mr. Casano billed a total of 1.9 hours related to preparation of the Complaint, which was comprised of 1.2 hours on July 11, 2005, for preparation of the Complaint and drafting of a summons; 0.3 hour on July 12, 2005, for a telephone conference with Plaintiff "regarding additional damages to include in the Complaint"; and 0.4 hour on July 12, 2005, for a "Supplemental Complaint with additional damages . . . ."  The Court finds that Mr. Casano reasonably worked those 1.9 hours and that Plaintiff therefore is entitled to reimbursement for those 1.9 hours.

Defendant also objects to Plaintiff's request for fees for:  2.6 hours of Mr. Casano's work which Defendant contends was "secretarial work . . . ,"  D.E. #72, at 6; "in excess of 6.7 hours . . . ," most of which allegedly "is secretarial time . . . ,"[8] *id.* at 7; and additional "hours which were purely administrative in nature . . . ," *id.*  As a preliminary matter, the Court must determine whether Plaintiff would be entitled to *any* compensation for clerical or secretarial work that Mr. Casano performed.   There is a split of authority regarding whether clerical or secretarial work is compensable.  *Compare, e.g.*, *Walker v. United States Dep't of Housing and Urban Development*, 99 F.3d 761, 770 (5th Cir. 1996) ("Clerical work, however, should be compensated at a different rate from legal work."), *with, e.g.*, *Surge v. Massanari*, 155 F. Supp. 2d 1301, 1307 (M.D. Ala. 2001) ("requests for . . . non-compensable clerical tasks [are] inappropriate").

Consistent with what appears to be the great majority of courts within the Eleventh Circuit that have considered that issue, this Court concludes that Plaintiff is not entitled to any

---

[8]  It is unclear whether the 6.7 hours *includes* the 2.6 hours, or whether instead the 6.7 hours is *in addition to* the 2.6 hours.  Regardless, the Court has examined all of Plaintiff's counsel's time entries.

reimbursement for clerical or secretarial tasks that Plaintiff's counsel performed.  *See, e.g.*, *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) (Mag. J. Seltzer) ("By contrast, 'work that is clerical or secretarial in nature is not separately recoverable.'") (quoting *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002)); *Manriquez v. Manuel Diaz Farms, Inc.*, No. 00-1511-CIV-SEITZ, 2002 WL 1050331, at *7 (S.D. Fla.  May 23, 2002) (Mag. J. Garber), *adopted*, slip op. (S.D. Fla. June 11, 2002) (J. Seitz); *Scelta*, 203 F. Supp. 2d at 1334; *Surge*, 155 F. Supp. 2d at 1307; *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000) ("Further, to the extent that Smith has billed time for serving the amended deposition notices, the court finds that this task is purely clerical, and, therefore, any time billed for service is not compensable."); *Inman v. Apfel*, No. 3:97-CV-1273-J-HTS, 2000 WL 1221858, *2 (M.D. Fla. Jul. 14, 2000) ("Defendant is correct that tasks of a clerical nature are not compensable as attorney's fees."); *Smith v. Apfel*, No. Civ. A. 99-0306-AH-L, 2000 WL 284260, *3 (S.D. Ala. Mar. 10, 2000); *Davis v. Apfel*, No. Civ. A. 97-1043-P-M, 2000 WL 204591 (S.D. Ala. 2000) ("Plaintiff has also requested reimbursement for 2.9 hours of clerical work at the hourly rate of $10.00. Even though Defendant has not objected to it, normally the cost of clerical work is a part of doing business and it is built into the hourly rates charged by and awarded to attorneys.  Such work is not billed separately to clients and the Court finds that Plaintiff is not entitled to be compensated separately for it other than through the $117.00 hourly attorney fee rate."); *In re Bicoastal Corp.*, 121 B.R. 653, 655 (Bankr. M.D. Fla. 1990) ("This Court did not award fees to Brown & Wood for services that were purely clerical or secretarial.  This is so because first, they are not legal services rendered by an attorney, but most importantly, they are subsumed in the hourly rate of the attorney and clearly part of the overall overhead, *i.e.*, cost of operation of Brown & Wood. .

. .  Similarly, no compensation was allowed for paralegals performing clerical functions such as organizing files, copying documents, checking the docket, updating files, checking court dates and delivering papers.").

Even if clerical or secretarial work were compensable, it would not be compensable at a paralegal's rate, let alone at Mr. Casano's hourly rate. *See, e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 288, 109 S. Ct. 2463, 2472 (1989) ("Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."); *Walker v. United States Dep't of Housing and Urban Development*, 99 F.3d 761, 770 (5th Cir. 1996); *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1306 (11th Cir. 1988) ("[A] fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment."); *Manriquez v. Manuel Diaz Farms, Inc.*, No. 00-1511-CIV-SEITZ, 2002 WL 1050331, at *7 (S.D. Fla.  May 23, 2002) (Mag. J. Garber), *adopted*, slip op. (S.D. Fla. June 11, 2002) (J. Seitz); *Johnson v. Apfel*, No. CIV. A. 00-0086-P-C, 2001 WL 303296, at *3 & n.2 (S.D. Ala. Mar. 14, 2001) (finding that the market rate for lawyer was $117.00 per hour but that the "clerical rate" was $10.00 per hour). Plaintiff has not even attempted to prove the prevailing market rate for clerical or secretarial work, and therefore Plaintiff would not be entitled to compensation for clerical or secretarial work even if such work generally were compensable. *See, e.g.*, *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000) ("Blacksher did even worse than Still, introducing *no* evidence of the market value of his services."); *Manriquez*, 2002 WL 1050331, at *7 ("Manriquez has not even attempted to prove that prevailing market rate, and therefore he would not be entitled to compensation for the clerical work even if such work generally were compensable.").

15

The Court agrees that Plaintiff has sought compensation for non-compensable secretarial or clerical work.  Specifically, work related solely to scheduling of mediation and depositions generally is clerical or secretarial, *see, e.g.*, *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1261 (M.D. Ala. 2000) ("time for serving the amended deposition notices . . . is purely clerical"); *Cuban Museum of Arts and Culture, Inc. v. City of Miami*, 771 F. Supp. 1190, 1192 (S.D. Fla. 1991) (J. King) ("it may indeed be appropriate for members of an attorney's staff to handle *clerical work* involving the preparation of subpoenas duces tecum") (emphasis added), and in this action Plaintiff is not entitled to fees for the following work:  0.1 hour on September 27, 2005, related to "scheduling depositions"; four 0.2 hour entries (for a total of 0.8 hour) on September 28, 2005, related to preparation of subpoenas duces tecum; 0.2 hour on October 5, 2005, related to deposition subpoenas; 0.3 hour on October 5, 2005, related to preparation of a notice of change of address; 1.7 hours on October 6, 2005, related to preparation of subpoenas duces tecum and communications with opposing counsel regarding scheduling of depositions; 0.3 hour on October 19, 2005, regarding scheduling of depositions; 0.6 hour on October 21, 2005, related to a notice of taking deposition and a subpoena duces tecum; 0.2 hours on November 8, 2005, related to scheduling of a deposition; 0.1 hour on November 14, 2005, related to scheduling of depositions; 0.6 hour on November 16, 2005, related to scheduling of depositions; 0.5 hour on November 30, 2005, regarding subpoenas duces tecum; 0.7 hour on December 2, 2005, regarding subpoenas duces tecum and scheduling of depositions; 0.1 hour on December 13, 2005, regarding scheduling of depositions; and 0.4 hour on January 10 and 11, 2006, regarding re-scheduling of mediation.[9]

_____

[9]  The Court finds that the 0.4 hour related to re-scheduling of mediation was clerical or secretarial in nature, but that other hours related to mediation - including the original scheduling of the mediation (which according to Plaintiff's entries involved not only coordinating numerous

Plaintiff therefore is not entitled to compensation for 6.6 hours of secretarial or clerical work which Mr. Casano performed.  The Court concludes, however, that Mr. Casano reasonably worked the remaining 81.6 hours for which Plaintiff seeks reimbursement.

The lodestar therefore equals $14,280.00, *i.e.* 81.6 hours times $175.00 per hour.

Once the Court has calculated the lodestar, "the [C]ourt has the opportunity to adjust the lodestar to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000); *see also, e.g.*, *Bernard v. Int'l Portfolio Mgmt., Inc.*, No. 04-60671-CIV-ZLOCH, 2005 WL 1840157, at *1 (S.D. Fla. July 25, 2005) (Chief J. Zloch).  The undersigned concludes that the lodestar represents the reasonable fees to which Plaintiff is entitled and that the Court therefore should not adjust the lodestar.

<u>Costs to which Plaintiff is entitled</u>

Plaintiff seeks costs only pursuant to 28 U.S.C. § 1920.  *See* D.E. #68, at 3 ("[T]he amounts charged are limited to those allowed under 28 USC § 1920."); *id.* ("As such, the Plaintiff would request the award of $3,881.83, as allowed under 28 USC § 1920.").  It therefore appears that Plaintiff is only seeking costs pursuant to Rule 54(d) based on its status as a prevailing party, and not pursuant to any other authority based on Defendant's bad faith litigation.  *See, e.g.*, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S. Ct. 2494, 2499 (1987) (holding that a Court considering a Rule 54(d) request for costs is not "empowered to exceed the limitations

---

individuals' schedules, but also subjects such as the "course of mediation") - were not purely secretarial or clerical and therefore are compensable lawyer's time.

explicitly set out in [28 U.S.C.] §§ 1920 and 1821 without plain evidence of congressional intent to supersede those sections"); *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (holding that a court considering a Rule 54(d) request for costs "may only tax costs as authorized by statute . . . ," and affirming award of several costs pursuant to § 1920 and Rule 54(d)).

Federal Rule of Civil Procedure 54(d) provides: "Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." Although that Rule "generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party . . . ," *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 442, 107 S. Ct. 2494, 2497 (1987), "such discretion is not unfettered." *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995). Instead, there exists "a presumption that costs are to be awarded to a prevailing party . . . . To defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so." *Chapman v. AI Transport*, 229 F.3d 1012, 1038-39 (11th Cir. 2000).

Assuming there is no sound basis for refusing to tax costs in favor of Plaintiff, Plaintiff is entitled to those costs which are authorized by statute. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S. Ct. 2494, 2499 (1987); *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). The Court concludes that there is no sound basis for refusing to task costs in favor of Plaintiff. Pursuant to 28 U.S.C. § 1920, therefore, Plaintiff may recover:

(1)     Fees of the clerk and marshal;

(2)     Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3)     Fees and disbursements for printing and witnesses;

(4)     Fees for exemplification and copies of papers necessarily obtained for use in

the case;

(5)     Docket fees under section 1923 of this title;

(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920; *see, e.g.*, *E.E.O.C. v. W&O, Inc.*, 213 F.3d at 620.

Defendant has only challenged some of the costs Plaintiff seeks to recover. Plaintiff seeks to recover the $250.00 filing fee, and Defendant does not challenge that cost. Plaintiff is entitled to that cost pursuant to 28 U.S.C. § 1920(1). *See, e.g.*, *Bernard v. Int'l Portfolio Mgmt., Inc.*, No. 04-60671-CIV-ZLOCH, 2005 WL 1840157, at *4 (S.D. Fla. July 25, 2005) (Chief J. Zloch).

Plaintiff attempts to recover various amounts for photocopies, "[e]xcess [p]ostage . . . ," and at least one "[f]acsimile charge . . . ." Plaintiff is not entitled to recover the requested costs for postage, *see Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (Holding that postage costs are "clearly nonrecoverable."), or facsimiles, *see, e.g.*, *Scelta v. Delicatessen Support Services, Inc.*, 203 F. Supp. 2d 1328, 1339 (M.D. Fla. 2002); *Tang How v. Edward J. Gerrits, Inc.*, 756 F. Supp. 1540, 1545 (S.D. Fla. 1991), *aff'd*, 961 F.2d 174 (11th Cir. 1992); *Desisto College, Inc. v. Town of Howey-In-The-Hills*, 718 F. Supp. 906, 914 (M.D. Fla. 1989), *aff'd*, 914 F.2d 267 (11th Cir. 1990) (Table); *Avirgan v. Hull*, 705 F. Supp. 1544, 1547 (S.D. Fla. 1989), *clarified on other grounds*, 125 F.R.D. 189 (S.D. Fla. 1989), *aff'd*, 932 F.2d 1572 (11th Cir. 1991).

The costs of photocopies are recoverable if the copies were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4); *see E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 622-23 (11th Cir. 2000). However, those costs are not recoverable if the copies were made merely for counsel's convenience, *Helms v. Wal-Mart Stores, Inc.*, 808 F. Supp. 1568, 1570 (N.D. Ga. 1992) *aff'd*, 998 F.2d 1023 (11th

Cir. 1993) (Table); *Desisto Coll. v. Town of Howey-in-the-Hills*, 718 F. Supp. 906, 913 (M.D.

Fla.1989) (J. Black), *aff'd,* 914 F.2d 267 (11th Cir. 1990), or constituted general copying, *Duckworth*

*v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) ("[C]osts such as general copying . . . are clearly

nonrecoverable.").  Plaintiff has the burden to demonstrate that copies were necessarily obtained for

use in this case.  *See, e.g.*, *Helms*, 808 F. Supp. at 1570; *Desisto Coll.*, 718 F. Supp. at 910 n.1.

Plaintiff has submitted no evidence from which the Court can determine that the photocopies

at issue were necessarily obtained for use in the case, as opposed to, for example, copies that Plaintiff

made merely for counsel's convenience.  Those costs therefore are not recoverable.  *See, e.g.*, *Scelta*

*v. Delicatessen Support Services, Inc.*, 203 F. Supp. 2d 1328, 1340 (M.D. Fla. 2002) ("In this case,

the defendants' substantiation and description of their photocopying expenses consists of each firm's

billing records which merely state 'copies' or 'photocopies' . . . . Conspicuously missing from these

billing records is any description of the nature or purpose of the photocopying."); *Coleman v.*

*Roadway Express*, 158 F. Supp. 2d 1304, 1310 (M.D. Ala. 2001) ("The costs of copies made for a

variety of reasons during the litigation process may be recoverable. . . . However, when the party

'fails to respond to the objections to a bill of costs by coming forward with evidence showing the

nature of the documents copied and how they were used or intended for use in the case, the court

may disallow costs.'") (quoting *Fulton Fed. Sav. & Loan v. Am. Ins. Co.*, 143 F.R.D. 292, 300 (N.D.

Ga.1991)); *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1265 (M.D. Ala. 2000)

("Plaintiff has not specified the 'purpose' of the photocopies which he seeks to recover as 'copying

expense[s]' and 'general copying throughout [the] file.' . . . . Because Plaintiff has not demonstrated

that the photocopying costs were 'necessary' for 'use' in the litigation, the court finds that Plaintiff

cannot recover these costs."); *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1299 (M.D.

20

Fla. 2000) ("To recover for photocopy expenses, a prevailing party must produce adequate documentation to show that the copies at issue were reasonably intended for use in the case."); *Blevins v. Heilig-Meyers Corp.*, 184 F.R.D. 663, 668 (M.D. Ala. 1999); *Helms v. Wal-Mart Stores, Inc.*, 808 F. Supp. 1568, 1570 (N.D. Ga. 1992) ("The party seeking recovery of photocopying costs must come forward with evidence showing the nature of the documents copied, including how they were used or intended to be used in the case. . . . A prevailing party may not simply make unsubstantiated claims that such documents were necessary, since the prevailing party alone knows for what purpose the copies were made. . . . Defendant here has not explained the use of the copies for which he asks the court to award costs. Therefore, the court will deny these costs."), *aff'd*, 998 F.2d 1023 (11th Cir. 1993) (Table).

Defendant does not challenge Plaintiff's entitlement to recover process server fees, but does challenge the fact that with respect to service of process on different witnesses, Plaintiff is attempting to recover many different amounts.  In other words, Plaintiff is attempting to recover different amounts at different times for what was essentially the same task:  service of process.

Without question, Plaintiff is entitled to recover private process server fees.  *See* 28 U.S.C. § 1920(1); *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000) ("We hold that private process server fees may be taxed pursuant to §§ 1920(1) and 1921."); *Manriquez v. Manuel Diaz Farms, Inc.*, 2002 WL 1050331, at *5 (S.D. Fla. May 23, 2002) (Magistrate J. Garber), *adopted*, No. 00-1511-CIV-SEITZ (S.D. Fla. June 11, 2002) (J. Seitz).

Plaintiff seeks costs ranging from $27.00 to $67.00 for process server fees, all but one of which relate to private process server PI Services:  $28.00 on October 13, 2005, for service on Bow to Stern Maintenance, Inc.; $67.00 on November 3, 2005, for service on Louis Gorbea; $68.00 on

21

November 8, 2005, for service on Todd Byers; $27.00 on December 6, 2005, for service on Manny Acebal; $30.00 on December 27, 2005, for service on Daniel Ramos; $67.00 on December 27, 2005, for service on Paul Sandlin; $34.00 on December 27, 2005, for service on Manny Acebal; $67.00 on December 27, 2005, for service on RPM Diesel Engine Co.; $27.00 on December 27, 2005, for service on Frank Morea; $67.00 on December 27, 2005, for service on Bill Bickart; $67.00 on December 27, 2005, for service on Expert Diesel; $63.00 on December 27, 2005, for service on Loraine Godinez; $30.00 on February 3, 2006, for service on Daniel Ramos; and $65.00 on February 3, 2006, for service on Andrew Becker.  The one process server fee unrelated to PI Services is a $44.00 charge which Plaintiff billed on April 27, 2006, and which related to another process service company's - Vendor Process Services, Inc. - actions in serving a subpoena on Tom Miller.

At first glance, therefore, it appears that Plaintiff paid between $27.00 and $67.00 for private service of process on various individuals and entities.  After first reading the parties' briefs, the Court shared Defendant's concerns regarding the highly-variable fees which Plaintiff paid to effect service of process.  At the September 14, 2006, hearing, however, Plaintiff explained why some of the discrepancies exist:  Plaintiff explained that there are several charges of approximately $27.00 and several charges of approximately $67.00, and the higher of those two charges reflect occasions on which the private process server, as opposed to Plaintiff, directly paid the witness the $40.00 witness fee to which he, she, or it is entitled.  In other words, $67.00 simply equals the $27.00 service of process fee plus the $40.00 witness attendance fee.

Defendant has not disputed that Plaintiff was required to pay $40.00 attendance fees to the witnesses at issue; and those $40.00 fees are a recoverable cost pursuant to Rule 54(d).  *See* 28 U.S.C. § 1920(3) ("Fees and disbursements for printing and witnesses"); 28 U.S.C. § 1821(b) ("A

witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."); *see also, e.g.*, *Artisan Contractors Ass'n of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039-40 (11th Cir. 2001); *Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 462-63 (11th Cir. 1996); *Parkes v. Hall*, 906 F.2d 658, 659 (11th Cir. 1990).

Factoring in Plaintiff's explanation regarding the process server, PI Service's, payment of the $40.00 witness attendance fee, the costs for which Plaintiff seeks reimbursement as to PI Services actually are as follows:  $28.00 on October 13, 2005, for service on Bow to Stern Maintenance, Inc.; $27.00 on November 3, 2005, for service on Louis Gorbea; $28.00 on November 8, 2005, for service on Todd Byers; $27.00 on December 6, 2005, for service on Manny Acebal; $30.00 on December 27, 2005, for service on Daniel Ramos; $27.00 on December 27, 2005, for service on Paul Sandlin; $34.00 on December 27, 2005, for service on Manny Acebal; $67.00 on December 27, 2005, for service on RPM Diesel Engine Co.; $27.00 on December 27, 2005, for service on Frank Morea; $27.00 on December 27, 2005, for service on Bill Bickart; $27.00 on December 27, 2005, for service on Expert Diesel; $23.00 on December 27, 2005, for service on Loraine Godinez; $30.00 on February 3, 2006, for service on Daniel Ramos; and $25.00 on February 3, 2006, for service on Andrew Becker.  The cost for which Plaintiff seeks reimbursement related to  Vendor Process Services, Inc. remains a single $44.00 charge, which Plaintiff noted on April 27, 2006, was for serving a subpoena on Tom Miller.

Plaintiff therefore paid PI services $23 one time, $25 one time, $27 seven times, $28 two times, $30 two times, and $34 one time to effect service of process.  Plaintiff also paid Vendor

Process Services, Inc. $44 for effecting service of process one time.  In total, Plaintiff is seeking reimbursement for utilizing private process servers fifteen times and paying them a total of $431.00, for an average of $28.73 per private service, which is lower than the "standard PI vendor service fee of $30.00" which Defendant asked the Court to apply.  D.E. #72, at 9.  The variations in amounts charged by the private process servers are not so great as to the warrant an inquiry into why the amounts charged are different, let alone sufficient to warrant denial of the entire taxable cost because of those minor variations in amounts charged.

The Court therefore concludes that Plaintiff is entitled to recover as compensable Rule 54(d) costs $431.00 in private process server fees plus $320.00 in 28 U.S.C. § 1821(b) witness appearance/attendance fees related to eight of the individuals and entities on whom PI Services served process.

Defendant next objects to Plaintiff's attempt to recover $1,000.00 in costs related to a non-expert witness, Todd Byers.  Plaintiff did not discuss that request in its Motion, but in its itemized billing statement, it listed the relevant entry on April 27, 2006, and characterized it as:  "1,000 payment to Todd Byers for mileage, travel costs, witness fees, and subsistence from Lake Wales to Miami . . . ."

Generally, a non-expert witness such as Mr. Byers who travels from outside the district for his deposition is entitled to a $40.00 per day appearance fee plus certain subsistence costs delineated in 28 U.S.C. § 1821.  *See, e.g.*, *Cronin v. Wash. Nat'l Ins. Co.*, 980 F.2d 663, 672 (11th Cir. 1993). Plaintiff, however, has not identified with any specificity the precise "travel costs, witness fees, and subsistence" which comprise the $1,000.00 Plaintiff seeks, let alone submitted any evidence to support that cost.  The Court therefore concludes that Plaintiff is not entitled to recover the $1,000.00

related to witness Todd Byers.

Defendant has not objected to Plaintiff's request for reimbursement of several court reporter appearance fees and transcript fees related to depositions. *See* Plaintiff's cost entries for November 11, 2005 (two $80.00 entries and one $899.20 entry); December 6, 2005, entry ($644.85); and December 20, 2005, entry ($159.25).   Pursuant to § 1920(2), Plaintiff is entitled to recover "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case . . . ." 28 U.S.C. § 1920(2); *see also, e.g.*, *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000).  Because the parties presumably have equal knowledge of the basis for each deposition, the non-prevailing party - Defendant - has the burden to prove that a specific deposition cost or court reporter's fee was not necessary for use in the case. *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Integra Resort Mgmt., Inc.*, 385 F. Supp. 2d 1272, 1288 (M.D. Fla. 2005) ("When challenging whether costs are properly taxable, the burden lies with the losing party, unless the knowledge regarding the proposed cost is a matter within the exclusive knowledge of the prevailing party. "); *Manriquez v. Manuel Diaz Farms, Inc.*, No. 00-1511-CIV-SEITZ, 2002 WL 1050331, at *4-*5 (S.D. Fla.  May 23, 2002) (Mag. J. Garber), *adopted*, slip op. (S.D. Fla. June 11, 2002) (J. Seitz); *Royal Palace Hotel Assocs., Inc. v. Int'l Resort Classics, Inc.*, 178 F.R.D. 595, 602 (M.D. Fla. 1998) ("When challenging whether costs are properly taxable, the burden lies with the losing party, unless the knowledge regarding the proposed cost is a matter within the exclusive knowledge of the prevailing party.") ; *Daugherty v. Westminster Schools, Inc.*, 174 F.R.D. 118, 123-24 (N.D. Ga. 1997); *Smith v. Vaughn*, 171 F.R.D. 323, 326 (M.D. Fla. 1997); *Helms v. Wal-Mart Stores, Inc.*, 808 F. Supp. 1568, 1571 (N.D. Ga. 1992) ("In addition, since both parties should be aware of the reasons to take a deposition, . . . the non-prevailing party should explain why the court should not grant that

cost."), *aff'd*, 998 F.2d 1023 (11th Cir. 1993) (Table); *Desisto College, Inc. v. Town of Howey-In-The-Hills*, 718 F. Supp. 906, 910 n.1 (M.D. Fla. 1989) ("This Court sees no reason why at the conclusion of the case a losing party cannot discern the necessity of a deposition for the purpose of arguing whether or not the deposition was necessarily obtained. If a deposition was taken for a reason only within the knowledge of the prevailing party, it is likely that the deposition was not necessarily obtained."), *aff'd*, 914 F.2d 267 (11th Cir. 1990) (Table).

Because Defendant has not argued, let alone demonstrated, that Plaintiff did not necessarily obtain the relevant deposition transcripts for use in this action, Plaintiff is entitled to recover the $1,863.30 it has requested pursuant to § 1920(2).

In summary, Plaintiff is entitled to recover from Defendant $2,864.30 in costs.


Typographical error

Plaintiff seeks amendment of an alleged typographical error in the Court's Memorandum Opinion Containing Findings of Fact and Conclusions of Law, because in that Opinion the Court awarded Plaintiff $1,000.10 less than the amount to which Plaintiff allegedly is entitled.  *See* D.E. #68, at 4 n.4 ("Instead of the sum being $26,980[.]28, the total damages should have been $27,980.38").  Defendant does not dispute that that figure was a typographical error, and based on the record, it appears that Plaintiff is correct regarding that typographical error.  It therefore is recommended that the Court amend the judgment to reflect that Plaintiff is entitled to $27,980.38 in damages.

<u>Prejudgment interest</u>

In the Court's Memorandum Opinion Containing Findings of Fact and Conclusions of Law, the Court held that Plaintiff "is entitled to the award of prejudgment interest accruing from the date of the [relevant] expenditures," and the Court wrote that the statutory rate of prejudgment interest "for 2001 was 6%, per annum, with a daily rate of .0001644." D.E. #67, at 16. Plaintiff asks the Court to award a sum certain for prejudgment interest: $5,056.73, which allegedly represents 6% interest calculated from the date of each relevant payment through August 2, 2006, the date the Court's Memorandum Opinion Containing Findings of Fact and Conclusions of Law was filed, *see* D.E. #68, at 3-4.

As a preliminary matter, prejudgment interest generally is calculated to the date a judgment was *entered* on the docket, not the date the judgement was *filed*; and although the Court's judgment was filed on August 2, 2006, it was not entered on the docket until August 3, 2006. Therefore, Plaintiff's calculation is based on an incorrect date.

Additionally, however, if the Court amends the final judgment (*e.g.*, to account for the alleged typographical error addressed *supra*), then it is unclear whether prejudgment interest would be calculated to the date of entry of the original judgment or the date of entry of the amended judgment. The parties have not briefed that issue.

The simplest way to handle issues concerning calculation of prejudgment interest is to provide guidance to the parties as to how to calculate the amount of prejudgment interest without specifying a sum certain, just as Judge King did in the August 2 Memorandum Opinion Containing Findings of Fact and Conclusions of Law. It therefore is recommended that the Court deny Plaintiff's request to award a sum certain for prejudgment interest.

27

## RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that the Court GRANT IN PART and DENY IN PART Plaintiff's Motion for Attorneys' Fees and Litigation Expenses and Entry of Amended Final Judgment (D.E. #68).  It is also recommended that the Court:  (1) award Plaintiff $14,280.00 in attorneys' fees; (2) award Plaintiff $2,864.30 in costs; and (3) amend the judgment to reflect that Plaintiff is entitled to $27,980.38 in damages.

The parties have ten (10) days from the date of service of this Report and Recommendation to file written objections, if any, with the James Lawrence King, United States District Judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein.  *See LoConte v. Dagger*, 847 F.2d 745, 750 (11th Cir. 1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 18th day of October, 2006.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge James Lawrence King
Counsel of record